IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BEVERLY D. MCMAHON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-cv-00319 |
| v. ) | Chief Judge Haynes |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, TN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Plaintiff, Beverly D. McMahon, filed this action under the federal question statute, 28 U.S.C. § 1331, against the Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") asserting claims for unlawful retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq., as well as violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq.

Before the Court is Defendant's motion for partial judgment on the pleadings that seeks dismissal of Plaintiff's THRA claims (Docket Entry No. 7). The Defendant contends that Plaintiff's THRA claims are time barred because Plaintiff's alleged "constructive discharge" occurred in December 2011, more than one year prior to the filing of her complaint. Plaintiff did not file a response.

### A. ANALYSIS OF THE COMPLAINT

Plaintiff alleges that Defendant "constructively discharged" her from here position with the Metro Health Department in December, 2011. (Docket Entry No. 1, Complaint at ¶ 1. Plaintiff alleges that in April 2010 she reported that her supervisor unlawfully harassed her while she was working as Public Health Nurse II at the Lentz Health Center in the Metro Health Department and that this harassment continued after her report. Id. at ¶ 4. Plaintiff alleges that she was suspended without pay at the insistence of the "offending supervisor" on April 28 and 29, 2011 and was advised that "upon her return to work, Plaintiff would be assigned to work under the offending supervisor for retraining and probation." Id. Plaintiff took unpaid leave under the Family Medical Leave Act ("FMLA") on April 30, 2011 to receive treatment for stress and anxiety. Id. at ¶ 5.

Plaintiff returned to work on July 6, 2011, but during her absence, Plaintiff sent a letter to an "upper tier supervisor" detailing "the offending supervisor's conduct" and the effects of said conduct on her. Id. On June 24, 2011, the "upper tier supervisor" notified Plaintiff by letter that her claims would be investigated, but that she would have to work under and report to the offending supervisor. Id. at ¶ 6. On July 11, 2011, Plaintiff again took FMLA leave after the offending supervisor made an allegedly threatening remark to Plaintiff. Id. at ¶ 7. Before her return to work, Plaintiff filed a discrimination claim against Defendant, id, but this allegation does not refer to the entity that received this filing .

On July 26, 2011, Plaintiff returned to work and was transferred to work at the Woodbine Clinic under a different supervisor. Id. On September 29, 2011, Plaintiff learned that she would be reassigned to the Lentz Clinic, her former clinic, and alleges that this transfer was in retaliation for the discrimination charges that she filed. Id. at ¶ 8. Plaintiff alleges that on

October 31, 2011, her new supervisor "suddenly and without cause or warning" told Plaintiff that she could no longer access one of the clinics at Lentz where she ate lunch with a co-worker. Id. at ¶ 9. Plaintiff asserts that this action was "unjustified and retaliatory." Id.

On November 14, 2011, Plaintiff submitted to Defendant letters from her psychiatrist and counselor, stating that Plaintiff could not function at work "due to high intensity of stress, causing lack of focus, stomach upset, insomnia, tearfulness and chest pains." Id. The clinic's director denied Plaintiff's request for leave without pay because the clinic could not hold Plaintiff's position open "for an indefinite time." Id. at ¶ 10. The clinic director noted that the circumstances could lead to an "interruption or end" to Plaintiff's employment, but the Defendant would consider her application for re-employment without prejudice after Plaintiff's recovery. Id.

On November 23, 2011, Plaintiff received a letter stating "that she was being formally charged with absence without notification or approval for leave (AWOL), and inability to perform duties, when reasonable accommodation has been considered and cannot be made. Id. at ¶ 11. Defendant notified Plaintiff that a hearing on these charges was scheduled for December 2, 2011, and that potential disciplinary action could include demotion, suspension, or dismissal. Id. On December 1, 2011, Plaintiff resigned. Id.

On May 4, 2012, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and amended her charge on September 11, 2012. Id. at ¶ 1. Plaintiff requested a Right to Sue letter that the EEOC provided dated January 9, 2013. Id. Plaintiff filed her complaint in this action on April 9, 2013.

## B. CONCLUSIONS OF LAW

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion under Fed. R. Civ. P. 12(c) is reviewed under the same legal standards as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007). Thus, the Court must construe the factual allegations in a light most favorable to the Plaintiffs and decide whether Plaintiffs can prove any set of facts in support of their claims that would entitle them to relief. Id. at 438.

Tennessee Code Annotated § 4-21-311(d) provides a time limitation for claims brought under the THRA:

> A civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases, and any such action shall supersede any complaint or hearing before the commission concerning the same alleged violations, and any such administrative action shall be closed upon such filing.

"The Sixth Circuit has repeatedly held that the limitations period begins to run when the allegedly discriminatory act is communicated to the plaintiff-not when the facts which support a claim of discrimination become reasonably apparent." Russell v. Metropolitan Nashville Public Schools, No. 3–11–0536, 2012 WL 3241664, at *2, 4 (M.D. Tenn. Aug. 7, 2012) (citation omitted). "'The THRA's one year limitations period for bringing a direct court action is not tolled while administrative charges are pending with the THRC or the EEOC.'" Conner v. City of Jackson, Tenn., 669 F. Supp.2d 886, 890 (W.D. Tenn. 2009) (quoting Martin v. Boeing-Oak Ridge Co., 244 F. Supp.2d 863, 872 (E.D.Tenn.2002) (citation omitted); see also Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1485-86 (6th Cir.1989); Russell, 2012 WL 3241664, at *4 n.5.

4

The THRA requires that an action must be filed within one year of the alleged discriminatory actions. Tenn. Code Ann. § 4-21-311(d). Plaintiff resigned in December 2011 and did not file her federal action asserting her THRA claim until April 9, 2013. Plaintiff does not allege that she filed a state administrative complaint with the Tennessee Human Rights Commission. Accordingly, the Court concludes that Plaintiff's THRA claim is barred by the applicable statute of limitations. El-Zabet v. Nissan North Am., Inc., 211 F. App'x 460, 463 (6th Cir. 2006); Reed v. Inland Intermodal Logistics Servs., LLC, No. 09-2607, 2011 WL 4565450, *15 (W.D. Tenn. Sept. 29, 2011); Russell, 2012 WL 3241664, at *4.

For the reasons above, the Court concludes that Defendant's motion for partial judgment on the pleadings (Docket Entry No. 7) should be granted.

An appropriate Order is filed herewith.

ENTERED this the 30th day of July, 2013.

WILLIAM J. HAYNES, JR
Chief Judge
United States District Court