IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


BEVERLY D. MCMAHON          )
          )
      v.          )     NO.  3:13-0319
          )
METROPOLITAN GOVERNMENT OF     )
NASHVILLE AND DAVISON COUNTY,   )
TENNESSEE          )


TO:    Honorable William J. Haynes, Jr., Senior District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered October 31, 2014 (Docket Entry No. 30), the Court referred Plaintiff's

motion for partial summary judgment (Docket Entry No. 21) to the Magistrate Judge pursuant to

Rule 72(b) of the Federal Rules of Civil Procedure.  Also before the Court is Defendant's motion

for summary judgment (Docket Entry No. 24), which the Magistrate Judge has also addressed

because the issues raised by the motions are related.  Set out below is the Court's recommendation

for disposition of the motions.


## I. BACKGROUND[1]

Plaintiff Beverly McMahon ("Plaintiff") is a resident of North Carolina.  She was formerly

employed as a Public Health Nurse 2 by the Metropolitan Government of Nashville and Davidson

County, Tennessee ("Metro") in Nashville, Tennessee from 2006 to December 2011.  Plaintiff

---

[1] The background facts have been gleaned from the undisputed evidence in the parties'
summary judgment filings and from other filings.

asserts that, while working at the Lentz Health Center ("Lentz HC") in April 2010, she reported to her employer that she was being harassed by a supervisor named Pam Trotter ("Trotter") because of Plaintiff's sexual orientation. Plaintiff does not indicate in her Complaint what, if anything, occurred as a result of her report of harassment, but she alleges that Trotter continued to harass her and that, approximately one year later, she was suspended from work without pay for two days, largely upon the insistence of Trotter.[2] Plaintiff asserts that, prior to her return to work after the suspension, she was told that she would be assigned to work under Trotter for retraining and during a probation period.[3] She asserts that she took unpaid leave under the Family Medical Leave Act ("FMLA") instead of returning to work because of stress caused by being forced to work directly under Trotter. Plaintiff avers that she received mental health treatment while on leave and eventually returned to work on July 6, 2011. She alleges that her request to be transferred to a different work location was denied and she was placed under the supervision of Trotter. Five days later, on July 11, 2011, she again took unpaid leave from work under the FMLA. Upon her return to work on July 26, 2011, she was transferred to the Woodbine Clinic ("Woodbine"), where she was supervised by a different supervisor and where she completed a Performance Improvement Program ("PIP").[4]

---

[2] Although Plaintiff alleges that the suspension occurred on April 28 and 29, 2011, *see* Complaint at ¶ 4, the parties agree that the suspension occurred in March 2011. *See* Defendant's Response to Plaintiff's Statement of Material Facts (Docket Entry No. 35) at ¶ 5.

[3] Although not averred by Plaintiff in the Complaint, Plaintiff was put on a PIP that was to begin upon her return to work. *See* Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 31) at 4, ¶ 6.

[4] Plaintiff alleges that, prior to returning to work, she "filed a charge of discrimination" against Defendant. *See* Complaint at ¶ 7. Plaintiff's deposition testimony clarifies that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2011, alleging retaliation and discrimination based on sex and religion. *See* Docket Entry No. 24-2 at 3 and 18.

Plaintiff asserts that, on September 29, 2011, she was advised that she was being transferred back to the Lentz HC, an act to which she objected and an act that she alleges was retaliation against her because of her discrimination charge. Plaintiff alleges that the work environment at the Lentz HC caused her significant anxiety and stress and that she continued to suffer retaliatory acts. In November 2011, she requested leave without pay based upon the recommendation of her treating psychiatrist and treating counselor. *See* Docket Entry No 24-1 at 4 and 6 and Docket Entry No. 32-1. Dr. Paul, the Metro Director of Health ("the Director"), denied her request in an e-mailed letter on November 14, 2011. *See* Docket Entry No 25-2. On November 23, 2011, Plaintiff was advised by a letter from the Director that she was being formally charged with absence from work without notification or approval for leave and for inability to perform duties when reasonable accommodation has been considered and cannot be made. *See* Docket Entry No. 24-1 at 12-13. Although a disciplinary hearing concerning the charges was set for December 2, 2011, Plaintiff tendered her resignation on December 1, 2011. *See* Docket Entry No. 25-3. Plaintiff thereafter filed a second charge of discrimination with the EEOC on May 4, 2012, which she later amended. *See* Docket Entry No. 24-2, at 19-20. Plaintiff was issued a right to sue letter dated January 9, 2013.

On April 9, 2013, Plaintiff filed this action against Metro asserting that Defendant's actions, "taken in combination and context," constituted an adverse employment action and a constructive discharge (i) in violation of the anti-retaliatory provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e), *et seq.*, (ii) in violation of the anti-discrimination provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and (iii) in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq. See* Complaint (Docket Entry No. 1) at ¶ 1 and ¶ 12. She further alleges that she is a qualified individual

with a disability under the ADA whose ADA rights were violated. *Id*. at ¶¶ 13-14. Plaintiff seeks damages and demands a jury trial. By Order entered July 30, 2013 (Docket Entry No. 14), Plaintiff's claim under the THRA was dismissed with prejudice as time barred. The parties have engaged in discovery, and the two motions for summary judgment are the only motions currently pending before the Court.

## II. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The moving party has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Rodgers*, *supra*. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249. The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## III. THE PARTIES' DISPOSITIVE MOTIONS

Plaintiff seeks summary judgment as to Defendant's liability under the ADA. Plaintiff first argues that the two letters sent to her from the Director in November 2011 are direct evidence of disability discrimination and entitle her to judgment in her favor on the issue of liability, leaving only the amount of damages to be resolved. Alternatively, Plaintiff argues that Defendant's ADA liability is established because the undisputed material facts establish a *prima facie* case of disability discrimination through indirect evidence. Plaintiff supports her motion with her own affidavit (Docket Entry No. 25), the affidavit of Erin Frazier-Maskiell, a counselor who treated her (Docket Entry No. 28), copies of documents provided by Defendant during discovery (Docket Entry No. 29-1), and excerpts from the depositions of three Metro Health Department employees – Carline

Fanfan (Docket Entry No. 29-2), Tatum Johnson (Docket Entry No. 29-3), and Pamela Trotter (Docket Entry No. 29-4).

Defendant seeks summary judgment on both Plaintiff's retaliation and disability discrimination claims. Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation because her evidence is based upon several events that do not constitute materially adverse employment actions and, further, because Plaintiff fails to support the causal connection element required for a *prima facie* case of retaliation. Defendant also asserts that legitimate, non-discriminatory reasons existed for the challenged employment decisions and that Plaintiff cannot show that any of the proffered reasons were pretext for retaliation. With respect to Plaintiff's disability discrimination claims, Defendant concedes for the purposes of the summary judgment motion that Plaintiff was disabled under the ADA but argues that Plaintiff was not a qualified individual under the ADA and that there is also no evidence supporting a conclusion that Defendant failed to accommodate reasonable requests by Plaintiff for accommodation.[5] In support of its motion, Defendant relies upon excerpts from Plaintiff's deposition (Docket Entry No. 24-2), the declaration of Metro Health Department employees Leslie Robeson (Docket Entry No. 24-3) and Tatum Johnson (Docket Entry No. 24-4), and documents from Plaintiff's employment file (Docket Entry No. 24-1).

---

[5] Defendant also raises an argument that any claims by Plaintiff based upon events occurring prior to July 9, 2011, are time barred. *See* Docket Entry No. 26 at 2, n.4. Plaintiff has not addressed this argument. Although Plaintiff includes in her lawsuit allegations and evidence pertaining to events occurring prior to July 9, 2011, the actual claims raised by Plaintiff are, thus, conceded as being based upon events occurring after this date.

# IV. ANALYSIS

The Court's review of the pending motions has been made somewhat difficult because of the manner in which the parties' arguments have been presented in their filings. Plaintiff generally paints her picture using a broad brush that often glosses over specific legal principles applicable to her claims. On the other hand, Defendant uses a fine brush that emphasizes narrow issues and often misses the overall context presented by the facts of this lawsuit. Regardless, after review of the parties' motions and related filings, the Court finds that the jury must determine the ultimate issue of whether Plaintiff was an aggrieved employee who was unlawfully discriminated against because of a disability in the face of recognized mental health issues and/or was unlawfully retaliated against or, instead, was an employee who unreasonably requested an indefinite leave from work, refused to return to work when her request was properly denied, and then resigned in the face of disciplinary charges. Accordingly, with a few exceptions as noted herein, the parties' motions for summary judgment should be denied.

## A. ADA's Statutory Protections and Legal Framework

The ADA "is intended to ensure that individuals living with disabilities are treated fairly and afforded equal opportunity, including within the workplace." *Evola v. City of Franklin, Tenn.*, 18 F.Supp.3d 935, 944 (M.D. Tenn. 2014). It is unlawful under the ADA to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA includes within the definition of discrimination "not making reasonable accommodations to the known physical or

mental limitations of an otherwise qualified individual with a disability" unless an employer "can demonstrate that the accommodation would impose an undue hardship" on the employer's business operation. 42 U.S.C. § 12112(b)(5)(A). An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

There are two paths a plaintiff may take to prove that a defendant took actions that amounted to unlawful discrimination; 1) reliance on circumstantial evidence, or 2) reliance on direct evidence. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004), *cert. denied,* 543 U.S. 817, 125 S.Ct. 68, 160 L.Ed.2d 25 (2004); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997). Under either path, a plaintiff must ultimately demonstrate that "but for" her disability, she would not have suffered the challenged employment action. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) (*en banc*).

In a case based upon circumstantial evidence, the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), applies and requires a plaintiff to first create an inference of discrimination by establishing a *prima facie* case. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *Hendrick*, 355 F.3d at 452-53. Upon the showing of a *prima facie* case, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for the challenged action. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). If the defendant satisfies its burden of production, a plaintiff must show by a preponderance of the evidence that the proffered explanation is pretext for discrimination. *Id.*

On the other hand, the direct evidence avenue is based on a showing of evidence which, if believed, requires the conclusion that unlawful discrimination was the "but for" cause of the challenged action. *See Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014). As the Sixth Circuit has stated "[s]uch evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). If a plaintiff presents direct evidence, it is not necessary for the trier of fact to make an inference that unlawful discrimination occurred because the evidence, if believed, is direct proof of discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

B. Plaintiff's Motion For Partial Summary Judgment

Plaintiff argues that the two letters from the Director constitute direct evidence of disability discrimination and entitle her to summary judgment in her favor on liability under the ADA as a matter of law. *See* Docket Entry No. 41 at 6-9. In the letter dated November 14, 2011 (the "November 14 Letter"), the Director denied Plaintiff's request for additional leave without pay because the request was for an indefinite duration and Defendant was not able to hold Plaintiff's position open for an indefinite period of time. *See* Docket Entry No. 25-2. The letter dated November 23, 2011 (the "November 23 Letter"), informed Plaintiff that she had not obtained prior approval for her failure to report to work after her request for additional leave without pay was denied and she was, thus, considered to be in violation of Defendant's attendance and leave policy and could be subject to discipline. *See* Docket Entry No. 29-1. The November 23 Letter further

notified Plaintiff that a hearing was scheduled for December 2, 2011, to determine the validity of the two alleged disciplinary violations and what, if any, discipline was appropriate. *Id*.

The Court does not agree that either letter constitutes direct evidence of unlawful disability discrimination, let alone constitutes direct evidence of unlawful disability discrimination that is so unequivocal that it requires summary judgment in favor of Plaintiff. In both letters, Defendant sets out workplace policies and factors as the stated reasons for the actions taken. Further, in neither letter does Defendant base its actions directly on the fact that Plaintiff is disabled or considered disabled. The mere reference in the letters to Plaintiff's "recovery," the need for Plaintiff to be at work, and her request for medical leave do not render the letters direct evidence of disability discrimination. *See Hedrick*, 355 F.3d. at 454-55. Inferential steps are required in order to make a conclusion that Defendant acted with an unlawful discriminatory motive. In this respect, the instant action is readily distinguishable from the three cases cited by Plaintiff in support of her argument that she has direct evidence of discrimination. *See Lovell v.Champion Car Wash, LLC*, 969 F.Supp.2d 945 (M.D. Tenn. 2013); *Coffman v. Robert J. Young Company, Inc*., 871 F.Supp.2d 703, 714 (M.D. Tenn. 2012); and *Burress v. City of Franklin*, Tenn., 809 F.Supp.2d 795, 810-811 (M.D. Tenn. 2011). Accordingly, Plaintiff's motion for partial summary judgment should be denied to the extent that she seeks judgment in her favor based on a direct evidence argument.

Plaintiff also makes an argument that, even if she is not found to have direct evidence in her favor, the undisputed evidence establishes a *prima facie* case of unlawful workplace discrimination for a circumstantial evidence case and she is, thus, entitled to summary judgment on the issue of liability. *See* Docket Entry No. 41, at 12-13. Plaintiff's argument somewhat misconstrues the nature of the recognized three-step approach to a circumstantial evidence case. The creation of an inference

of discrimination from a *prima facie* case merely triggers Defendant's burden to produce legitimate non-discriminatory reasons for the challenged actions. *Gribcheck*, 245 F.3d at 550. If Defendant satisfies its burden, Plaintiff must show by a preponderance of the evidence that the proffered explanation is pretext for discrimination. *Id*. Ultimately, Plaintiff must demonstrate that "but for" her disability, she would not have suffered the challenged employment action. *Lewis*, *supra*.

Defendant has proffered legitimate non-discriminatory reasons supporting its actions. *See* Docket Entry No. 34 at 9-10. The ultimate burden falls on Plaintiff to show by a preponderance of the evidence that the proffered explanations are a pretext for disability discrimination. However, this is not merely a burden of production, but one of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Thus, the showing of a *prima facie* case is not sufficient, in and of itself, to support a judgment of liability in favor of Plaintiff as she argues. *See St. Mary's Honor Ctr.,* 509 U.S. at 509*; Burdine*, 450 U.S. at 254; *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861-62 (6th Cir. 1997). Plaintiff is required to go farther than merely showing a *prima facie* case in order to win her case. Plaintiff must persuade the trier of fact that Defendant's articulated reasons for the challenged actions should be rejected and that she was the victim of unlawful discrimination. *See Jones*, 488 F.3d at 404. Far from showing that she is entitled to summary judgment as a matter of law, Plaintiff acknowledges that genuine issues of material fact exist, *see* Docket Entry No. 33 at 4, and that if her evidence "were to be considered indirect rather than direct evidence of discrimination, the plaintiff's disability discrimination claims nonetheless should proceed to trial." *See* Docket Entry No. 33 at 9. Accordingly, Plaintiff's motion for partial summary judgment based merely upon the showing of a *prima facie* case should be denied.

C. Defendant's Motion for Summary Judgment

1. The Scope of the ADA Claims Raised by Plaintiff

As an initial matter, the Court rejects Defendant's argument that seeks to limit the scope of Plaintiff's ADA claims. Defendant argues (i) that Plaintiff's Complaint does not include a "failure to accommodate" claim under the ADA, and (ii) that any failure to accommodate claim that is permitted should be limited to the specific content of Plaintiff's EEOC charge and should not include consideration of Plaintiff's theory that her transfer back to the Lentz HC from Woodbine in September 2011 amounted to a failure to accommodate. *See* Docket Entry No. 36 at 7-8.[6]

Defendant's argument is somewhat understandable given that Plaintiff's Complaint does not include specifically enumerated claims and does not distinctly set out a claim for failure to accommodate under the ADA. However, Plaintiff's Complaint includes factual allegations about requests for accommodation that were made to Defendant, *see* Complaint at ¶ 5 ("requested a transfer to a different work environment") and ¶ 9 (providers' letters that Plaintiff "be excused from work" were provided to Defendant), and Plaintiff clearly grounds her Complaint, in part, on the protections of the ADA. Given the lenient standard for the pleading of claims under Rule 8(a) of the Federal Rules of Civil Procedure and given the context of Plaintiff's overall allegations, Plaintiff's Complaint was sufficient to put Defendant on notice that she was pursuing a failure to accommodate claim.

The Court also finds no basis for narrowing Plaintiff's ADA claims because of the content of her EEOC charge. While, as a general matter, only those claims that are included in the

---

[6] In its actual motion for summary judgment, Defendant merely noted these matters and argued against the merits of a failure to accomodate claim. *See* Docket Entry No. 26 at 1-4 and n.11. Defendant did not raise this argument as a basis for summary judgment until its subsequent reply.

administrative charge of discrimination may be pursued in a subsequent lawsuit, *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010), this requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on . . . the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir.1980)). Consequently, an EEOC charge should be liberally construed to encompass all claims "reasonably expected to grow out of the charge of discrimination." *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992).

The instant action is not one in which Plaintiff is attempting to raise a claim that is a completely different type of claim than the claims included in her charge of discrimination, if for example she attempted to pursue an age discrimination claim in her lawsuit when her EEOC charge alleged only disability discrimination. To the contrary, Plaintiff's amended EEOC charge clearly sets out that Defendant's failure to accommodate her disability is a basis for her charge. *See* Docket Entry No. 24-2 at 20. Any particular theories that Plaintiff advances of how Defendant failed to accommodate can be reasonably expected to grow out of her EEOC charge and are properly before this Court even though those theories might not have been specifically stated in the EEOC charge. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).


2. Failure to Accomodate Claim

An employer's failure to provide a reasonable accommodation to a disabled employee is a distinct claim under the ADA. For any such claims, Plaintiff must show that she is disabled and is

a qualified individual within the meaning of the Act.[7]  42 U.S.C. § 12112.  Defendant challenges

Plaintiff's ability to show that she is "a qualified individual" under the ADA.[8]  To be a "qualified

individual," Plaintiff, "with or without reasonable accommodation," must be able to "perform the

essential functions of the employment position." 42 U.S.C. § 12111(8).  *See E.E.O.C. v. Ford Motor

Co.*, 782 F.3d 753, 761 (6th Cir. 2015).  A "reasonable accommodation" can include job

restructuring, part-time or modified work schedules, reassignment to a vacant position, and other

similar accommodations for individuals with disabilities.  42 U.S.C. §§ 12111(9)(B).  The

determination of whether an accommodation is reasonable is individual and particularized to the

employee seeking it.  *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th

Cir.1998).

Defendant argues that the undisputed facts show that Plaintiff requested an indefinite leave

of absence based upon her physician's opinion[9] that it was not possible to predict when she would

be able to return to work and that she thereafter stopped reporting to work when she was not granted

the requested leave of absence.  *See* Docket Entry No. 34 at 6 and Docket Entry No. 36 at 9.

Defendant contends that Plaintiff's inability to report to work and perform her job as a Public Health

Nurse 2 prevents her from showing that she is "otherwise qualified" for the position.  *See Gantt v.

Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).  The Sixth Circuit has repeatedly

---

[7] Defendant concedes, for the purposes of summary judgment, that Plaintiff was disabled during the relevant time frame.  *See* Docket Entry No. 34 at 5, § B.

[8] The Court notes that Defendant did not raise in its motion for summary judgment the argument that Plaintiff is not a qualified individual under the ADA, *see* Docket Entry No. 26 at 12-14, but first raised this argument in its reply brief and in its response to Plaintiff's motion for partial summary judgment.

[9] *See* Docket Entry No. 29-1 at 6.

held that regular job attendance is generally an essential function of most jobs and that an individual's inability to satisfy basic attendance requirements are grounds for finding that a particular disabled individual is not a qualified individual under the ADA. *See Ford Motor Co.*, 782 F.3d at 762-63; *Banks v. Bosch Rexroth Corp.*, 610 Fed.App'x 519, 528 (6th Cir. 2015); *Gantt*, *supra*; *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004).

Nonetheless, if a reassignment to a vacant position or another accommodation within an individual's current position would allow an individual to meet the essential functions of her job, such as attendance requirements, the individual is a qualified individual under the ADA. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 96th Cir. 1998). Plaintiff alleges that she was initially provided with an accommodation of leaving the Lentz HC to work at Woodbine in July 2011[10] and that this accommodation allowed her to return to work. She contends that, had this accommodation been kept in place as she requested[11] instead of requiring her to return to the Lentz HC, she would have been able to regularly attend work and, thus, perform the essential functions of her job. *See* Docket Entry No. 37 at 4. The burden on Plaintiff to propose an accommodation is not onerous, *Cehrs*, 155 F.3d at 781, and Plaintiff need only propose an accommodation that "seems reasonable on its face." *U.S. Airways v. Barnett*, 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). Given that, at the very least, a genuine issue of material facts exists as to whether an accommodation provided to Plaintiff by Defendant in the past allowed Plaintiff to return to work and

---

[10] *See* July 21, 2011, letter from Alisa Haushalter (Docket Entry No. 25-1), and Plaintiff's Affidavit (Docket Entry No. 25) at ¶ 7.

[11] *See* Plaintiff's Affidavit (Docket Entry No. 25) at ¶ 9, and Deposition of Fanfan (Docket Entry No. 29-2) at 20.

perform her job as a Public Health Nurse 2, the Court finds Plaintiff has shown that she is a qualified individual under the ADA.

Defendant's second challenge to Plaintiff's failure to accomodate claim is essentially that the accommodations requested by Plaintiff were not reasonable. An employer is not required to provide an accommodation if it shows that the requested accommodation would have imposed an undue hardship on it. *Kleiber*, 485 F.3d at 869; *Hedrick*, 355 F.3d at 452. Additionally, a request for leave that is indefinite "is objectively not an accommodation that the employer should be required to provide." *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000). Defendant has raised arguments explaining its position as to why Plaintiff's placement at Woodbine was temporary and why Plaintiff was returned to the Lentz HC. Defendant has also explained its position as to why providing Plaintiff with an extended leave of absence of indefinite duration was not possible and was unreasonable accommodation.

Plaintiff disputes the validity of these reasons and explanations and points to specific evidence as to why her placement at Woodbine was a reasonable accommodation and had been implemented as such by Defendant.[12] The Court finds that these matters involve disputed factual issues that must be resolved by the jury. For example, the evidence before the Court is not so one-sided that the Court can make a conclusion as to whether Defendant's decision to return Plaintiff to the Lentz HC was a business necessity that occurred because keeping Plaintiff at Woodbine would have imposed an undue hardship upon Defendant or whether this decision was an unnecessary reversal of a prior workable accommodation that had been provided to Plaintiff. Further, the Court

---

[12] *See* July 21, 2011, letter from Alisa Haushalter (Docket Entry No. 25-1), and Plaintiff's Affidavit (Docket Entry No. 25) at ¶ 7.

finds that the evidence before the Court regarding the parties' involvement in the interactive process is not so one-sided that it favors only Defendant. The Sixth Circuit has noted that the ADA regulations indicate that it may be necessary for an employer to initiate an informal, interactive process with the employee to determine the appropriate accommodation and that the "interactive process is mandatory and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d 871. Given that evidence exists that could be construed by a reasonable jury as showing that a workable accommodation had been implemented but was subsequently rescinded with no other accommodation being offered by Defendant, there is sufficient evidence before the Court upon which a reasonable jury could conclude that Defendant was the party responsible for the breakdown of the interactive process. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's failure to accommodate claim.

### 3. Claim for Discrete Acts of Disability Discrimination

In addition to her claim that she was denied a reasonable accommodation, Plaintiff appears to argue that some of the events at issue constitute discrete acts of discrimination upon which she asserts a claim under the ADA, i.e., 1) her transfer back to the Lentz HC in September 2011, 2) the restrictions on her access to certain areas of the Lentz HC, and 3) the denial of her request for an indefinite leave from work. To the extent that Plaintiff seeks to pursue individual and separate claims of discrimination based upon these discrete events, none of these events rise to the level of a materially adverse change in the terms and conditions of employment that is necessary to support a claim based upon a discrete employment action. *See Kocsis v. Multi–Care Mgmt. Inc.*, 97 F.3d

876, 885 (6th Cir.1996). Accordingly, summary judgment should be granted to Defendant to this extent.

However, Plaintiff also alleges that the disciplinary charges brought against her in the November 23 Letter were unwarranted and that she subsequently decided to resign in light of these charges and in light of the events that had occurred during the prior several months. Based upon these events, Plaintiff pursues a claim that she was constructively discharged.

To demonstrate a constructive discharge, Plaintiff must present evidence showing that Defendant deliberately created intolerable working conditions, as perceived by a reasonable person, with the intent to force Plaintiff to quit. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727-28 (6th Cir. 2014). A constructive discharge claim under the ADA "'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004)). Constructive discharge "requires a finding that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Id*. (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). Alternatively, a constructive discharge claim may exist when "an employer acts in a manner so as to have communicated with a reasonable employee that she will be terminated, and the plaintiff resigns." *Laster*, 746 F.3d at 728 (quoting *E.E.O.C. v. University of Chicago Hospitals*, 276 F.3d 326, 331-32 (7th Cir. 2002).

Defendant presents the scenario that Plaintiff jumped to an unreasonable conclusion that she would face termination as a result of the disciplinary charges and that she resigned on her own accord prior to allowing those charges to actually be heard. As such, Defendant argues that no

reasonable jury could find Plaintiff's only alternative in that situation was to resign. Defendant's scenario is based upon a narrow view of the events and essentially views the November 23 letter and Plaintiff' resignation a little over a week later in a vacuum removed from the context of other events.

However, the narrow view of the facts is not the only plausible scenario that is supported by the evidence. Plaintiff has offered facts supporting a scenario in which 1) she requested and was provided with an accommodation of being moved from the Lentz HC to Woodbine in order to accommodate her mental health issues, 2) she worked without incident at Woodbine, 3) the accommodation was unilaterally reversed against her wishes and she was returned to the Lentz HC where she again encountered disabling workplace stress, 4) upon the advise of her treating medical providers, she requested additional leave from work which was denied, and 5) she was charged with disciplinary violations when she was unable to return to work in the absence of any accommodations. Further, as set out *supra*, the Court has determined that a genuine dispute exists as to whether Plaintiff was denied a reasonable accommodation that would have allowed her to keep working for Defendant.

A constructive discharge can occur when "based upon an employer's actions, 'the handwriting was on the wall and the axe was about to fall.'" *Laster*, 746 F.3d 728 (quoting *University of Chicago Hospitals*, 276 F.3d at 332). A reasonable jury could determine the facts in favor of Plaintiff and find that her eventual resignation was both intended by Defendant and foreseeable given that she was transferred from an accommodating work situation to a work situation that was known to have previously caused her disabling stress, she was denied a request for leave from work when she could not continue working because of stress, and she was then charged with disciplinary violations because of her failure to return to the disabling work situation. Thus, Plaintiff

sets forth a constructive discharge claim that is sufficient to survive summary judgment. *See Talley*, *supra*.

4. Retaliation Claim

Plaintiff asserts a claim under Title VII based on allegations that she was unlawfully retaliated against for filing her initial EEOC charge in July 2011.[13] Specifically, she contends that Defendant retaliated against her by transferring her from Woodbine back to the Lentz HC in September 2011 and by the events that caused her constructive discharge. *See* Docket Entry No. 33 at 12.

In the absence of direct evidence of retaliation, a *prima facie* showing of Title VII retaliation requires an employee to show: (1) she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If the employee makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer meets this burden, the employee must demonstrate that the legitimate reason offered by the employer "was a pretext designed to mask retaliation." *Id.*

Defendant first argues that neither of the challenged workplace actions amount to a materially adverse action for the purposes of a *prima facie* case of retaliation. *See* Docket Entry No. 26 at 2.

_____

[13] Because Plaintiff's July 2011 EEOC charge alleged discrimination on the basis of sex and religion, her retaliation claim is brought under the anti-retaliation provisions of Title VII, not the ADA.

Defendant further argues that Plaintiff cannot satisfy the causal connection element of a *prima facie* case. Alternatively, Defendant argues that, even if Plaintiff is assumed to have met her *prima facie* case, it has articulated legitimate, non-discriminatory reasons for the challenged workplace actions and that Plaintiff has not set forth sufficient evidence on the issue of pretext to defeat Defendant's motion for summary judgment.

The Court is not persuaded by Defendant's arguments. The test for an adverse employment action in the retaliation context protects employees from employment actions and conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). This test encompasses a broader range of activity than the test for material adversity applied in a *prima facie* case of unlawful discrimination and includes consideration of the context of the particular circumstances of the case. *Id.* at 69; *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). Within the context of the facts at issue in this case, which must be viewed in the light most favorable to Plaintiff as the non-moving party for the purposes of determining Defendant's motion for summary judgment, a reasonable worker in Plaintiff's situation could have been dissuaded from making or supporting a charge of discrimination by the acts being transferred from an accommodating work situation to a work situation that was known to have previously caused disabling stress, being denied a request for leave from work in the face of disabling work stress, and being charged with disciplinary violations because of a failure to return to the disabling work situation. Furthermore, the burden on Plaintiff to establish a causal connection at the *prima facie* stage is minimal and can be satisfied by showing a "close temporal proximity" between the challenged actions and the protected activity. *Taylor*, 703 F.3d at 339. In the instant action, the

challenged employment actions occurred within a few months of Plaintiff's filing of her EEOC charge in July 2011, and satisfy the close temporal proximity standard.

A plaintiff's ability to show pretext is based on a showing that "the proffered reason given by the Defendant (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084-85 (6th Cir. 1994). As the Court has already found, genuine questions of material fact exist concerning whether Defendant's return of Plaintiff to the Lentz Clinic and Defendant's subsequent actions that culminated in Defendant's resignation were legitimate and supported by a factual basis. These factual questions apply equally to Plaintiff's narrow retaliation claim, and it will be for the jury to determine whether unlawful retaliation occurred or not.

## R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that:

1) Plaintiff's motion for partial summary judgment (Docket Entry No. 21) be DENIED;

2) Defendant's motion for summary judgment (Docket Entry No. 24) be GRANTED only to the extent that her allegations regarding her transfer back to the Lentz HC in September 2011, 2) the restrictions on her access to certain areas of the Lentz HC, and 3) the denial of her request for indefinite leave from work do not support discrete and individual claims of disability discrimination under the ADA as noted *supra* at Section IV(C)(3), and be DENIED in all other respects; and

3) this action be set for a trial by jury on all remaining claims.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge